People v Santiago (2025 NY Slip Op 51653(U))

[*1]

People v Santiago

2025 NY Slip Op 51653(U)

Decided on September 30, 2025

Criminal Court Of The City Of New York, New York County

Lally, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 30, 2025
Criminal Court of the City of New York, New York County

The People of the State of New York

against
Kymani Santiago, Defendant.

Docket No. CR-032449-24NY

For Defendant: Kayla Smith, Esq., New York County Defender Services, 100 William Street, 20th Floor, New York, New York 10038
For the People: Christopher Beute, Esq., New York County District Attorney's Office, One Hogan Place, New York, New York 10013

Kacie A. Lally, J.

Defendant Kymani Santiago moves for an order: (1) dismissing this matter pursuant to Criminal Procedure Law ("CPL") § 30.30; (2) suppressing statement evidence; (3) suppressing and precluding identification evidence; (4) suppressing physical evidence; and (5) granting a Sandoval hearing. The People oppose the motion in all respects and request that the Court deny it as untimely and procedurally barred.
On November 5, 2024, the People filed a felony complaint charging the Defendant, along with co-defendants Malik Butler and Jeremiah Dilworth, with Attempted Gang Assault in the First Degree (PL §§ 110/120.07) ("Count One"), Attempted Assault in the First Degree (PL §§ 110/120.10 [1]) ("Count Two"), Attempted Robbery in the First Degree (PL §§ 110/160.15 [3]) ("Count Three"), Assault in the Second Degree (PL § 120.05 [2]) ("Count Four"), and Assault in the Second Degree (PL § 120.05 [3]) ("Count Five"). The Defendant was arraigned the same day. 
On February 5, 2025, the People moved to dismiss Counts One through Four against the Defendant, and to reduce Count Five to Assault in the Third Degree (PL § 120.00 [1]). The People also filed a superseding information charging the Defendant with Assault in the Third Degree (PL § 120.00 [1]) ("Count One"), Assault in the Third Degree (PL § 120.00 [2]) ("Count Two"), Attempted Tampering with Physical Evidence (PL §§ 110/215.40 [2]) ("Count Three"), Criminal Possession of a Weapon in the Fourth Degree (PL § 265.01 [2]) ("Count Four"), Aggravated Harassment in the Second Degree (PL § 240.30 [4]) ("Count Five"), Attempted Assault in the Third Degree (PL §§ 110/120.00 [1]) ("Count Six"), and Harassment in the Second Degree (PL § 240.26 [1]) ("Count Seven"). 
According to the misdemeanor information, separately charged co-defendant Butler attempted to steal the complainant's motorized scooter, threatened him with a pair of scissors, [*2]and punched him in the face. As the physical altercation ensued, the Defendant and separately charged co-defendant Dilworth approached and punched and kicked the complainant. 
According to the prosecution, after the defendants were arrested, the People reviewed surveillance video of the incident. The People observed that during the altercation, the Defendant swung what appeared to be a knife at the complainant. The People further observed the Defendant discard a shiny object from his jacket pocket into a nearby sewer grate. Detective Christopher Desimone of the Emergency Services Unit reported to the incident location and recovered a multi-tool with a blade from the sewer grate.
I. Challenges to the Certificates of Compliance
The Defendant contends that the People's initial certificate of compliance ("COC") and certificate of readiness ("COR"), filed on April 22, 2025, and their supplemental COCs and restatements of readiness, filed on May 7, 2025, May 16, 2025, and July 2, 2025, are invalid because certain discovery materials were belatedly disclosed. For the reasons set forth below, the Defendant's challenge to the COCs and CORs is denied.
A. Criminal Procedure Law 245
Pursuant to Criminal Procedure Law Article 245, the People must produce certain initial discovery as a matter of course, without any demand from the defense [FN1]
(CPL 245.10, 245.20). When a defendant is not in custody and no individualized circumstances apply, this discovery must be served on the defense within thirty-five days of the defendant's arraignment (CPL 245.10[1] [a] [ii]).
Criminal Procedure Law § 245.20 (1) sets forth a non-exhaustive list of materials subject to automatic disclosure. The prosecution must make a diligent, good faith effort to ascertain the existence of these materials, and to make any such materials available for discovery, even where the items are "not within the prosecutor's possession, custody or control" (CPL 245.20 [2]). "[A]ll items and information related to the prosecution of a charge" that are "in the possession of any New York state or local police or law enforcement agency" are deemed to be "in the possession" of the prosecution (id.). The People are not, however, required to obtain by subpoena duces tecum materials which the defense may also obtain via subpoena.
Once the People have fulfilled their disclosure obligations pursuant to CPL 245.20, they must file a COC (CPL 245.50 [1]). In doing so, the People must affirm that, "after exercising due diligence and making reasonable inquiries and efforts to ascertain the existence of, obtain, and disclose material and information subject to discovery," the People have "disclosed and made available" all known, discoverable material that they have obtained (id.). In addition, the People must identify the specific items provided to the defense, and must disclose any materials "of which the prosecution is aware, but has been unable to obtain despite the exercise of due diligence" (id.). 
Absent an individualized finding of special circumstances, only after a proper COC has been filed can the People be deemed ready for trial (CPL 245.50 [3]). Indeed, CPL 30.30 provides that "[a]ny statement of trial readiness must be accompanied or preceded by a [*3]certification of good faith compliance with the disclosure requirements of section 245.20" (CPL 30.30 [5]). 
Once the People have filed a COC, the defendant must provide discovery to the prosecution within thirty days (CPL 245.10 [2]). Both the prosecution and the defense are bound by a continuing duty to disclose discoverable materials. If either party "subsequently learns of additional material or information which it would have been under a duty to disclose," then that party must "expeditiously notify the other party and disclose the additional material and information" (CPL 245.60).
Should the prosecution disclose additional discovery after filing a COC, the People must file and serve a supplemental COC. The supplemental COC must identify the additional materials provided, and must "detail the basis for the delayed disclosure" (id.; CPL 245.50 [1-a]). So long as the original COC was "filed in good faith and after exercising due diligence," the filing of a supplemental COC will not impact the validity of the original certificate [FN2]
(CPL 245.50 [1-a]; see also People v Bay, 41 NY3d 200, [2023]; People v Coley, — AD3d —, 2025 NY Slip Op 01945 [2d Dept 2025]; People v McMahon, 237 AD3d 746 [2d Dept 2025]). The court will, however, "impose a remedy or sanction that is appropriate and proportionate to the prejudice" for any discoverable materials that are "disclosed belatedly" (CPL 245.80).
If the defense is aware of a "potential defect or deficiency" relating to a COC filed by the People, then the defense must file a motion challenging the COC "within 35 days of service of the certificate"[FN3]
(CPL 245.50 [4] [b], [c]). Any such challenge must include an affirmation that the defense "timely conferred in good faith" or "timely made good faith efforts to confer with" the prosecution "regarding the specific and particularized matters forming the basis for" the challenge, and that such efforts to resolve the issues raised "were unsuccessful"[FN4]
(CPL 245.50 [4] [c]).
A court will not invalidate a COC if the prosecution "has exercised due diligence and [*4]acted in good faith in making reasonable inquiries and efforts to obtain and provide the material required to be disclosed" (CPL 245.50 [6]). In assessing whether the prosecution exercised due diligence, courts weigh the totality of the People's efforts to comply with their discovery obligations, "rather than assess[ing] the [prosecution's] efforts item by item" (CPL 245.50 [5]). The recently amended statute codifies the criteria set forth by the Court of Appeals in People v Bay, 41 NY3d at 212, along with other factors, for making such an assessment. In particular, relevant factors include: 
[T]he efforts made by the prosecutor to comply with [their discovery obligations]; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.
(CPL 245.50 [5]).
B. Application
Here, the Defendant argues that the People failed to properly disclose certain body-worn camera (BWC) footage for NYPD officers, as well as impeachment material for two testifying law enforcement witnesses. Specifically, the People timely disclosed portions from the BWC videos recorded by Officers Shen Chen, Danielle Preattle, and Joseph Pepperman, but did not timely disclose the full BWC footage for these officers. In addition, the People belatedly disclosed disciplinary and impeachment material for Officers Aaron Hosannah and Jorge Sari.
The People respond that the Defendant's motion is untimely under CPL 245.50 (4) (c), and is procedurally barred, because defense counsel failed to affirm good faith efforts to confer to obtain the missing discovery. The People further argue that, viewing the entirety of their efforts, they satisfied their statutory obligations based upon the complexity of the case, the volume of discovery disclosed, their own realization and self-correction of any discovery lapses, the duplicative nature of the belatedly disclosed BWC videos, and the lack of prejudice to the defense. For the reasons set forth below, the Court determines that the Defendant's motion is procedurally proper; however, the motion is denied, as the People have demonstrated due diligence and in good faith in fulfilling their discovery obligations. 
(i) Procedural Objections
The People's request to find the Defendant's motion untimely and procedurally barred is denied. Amendments to CPL 245 went into effect on August 7, 2025, and the text of the statute provides that those amendments "apply to all criminal actions pending" on that date (CPL 245.50 [4] [c], as amended by L 2025, ch 56, part LL § 8). As the instant case was "pending" on August 7, 2025, the current version of the statute applies, with one exception: the 35-day time limitation for challenging COCs applies only to certificates filed on or after the effective date of August 7, 2025 (id.). Because the original COC was filed on April 22, 2025, well before August [*5]7, 2025, the 35-day time limitation requirement does not apply. 
The People concede that the 35-day requirement for raising a COC challenge is not retroactive (see People's response at ¶ 6); they contend, however, that the instant challenge to the COC was not filed "as soon as practicable," as required under the predecessor statute (CPL 245.50 [4] [former (c)]).
The Court disagrees. The People's initial COC was filed on April 22, 2025. As set forth in Section I (B) (ii), infra, the People did not realize until May 16, 2025, that the full BWC videos of Officers Chen, Preattle, and Pepperman had not been disclosed. Additionally, it was not until May 15, 2025, that the People decided to call Police Officers Hosannah and Sari as trial witnesses, necessitating the disclosure of their disciplinary related materials (see People's response at ¶¶ 56-57). These belatedly disclosed materials, as well as a supplemental COC, were filed and served on May 16, 2025. 
On July 3, 2025, the first court date after the belated disclosures, the Defendant requested a motion schedule to challenge the COCs. Under these circumstances, the Court determines that the defense raised its challenge to the COC "as soon as practicable" (CPL 245.50 [4] [former (c)]). The Defendant does not appear to have been on notice that the belatedly disclosed materials existed prior to May 16, 2025, and he requested a motion schedule to address the alleged discovery violations on the very next court date. 
Because the instant motion was filed on August 8, 2025, one day after the amendments to CPL 245 took effect, the requirement that any challenge to a COC be accompanied by an affirmation regarding the defense's "good faith efforts to confer with" the prosecution regarding the discovery dispute applies (CPL 245.50 [4] [c]). The People contend, and the Defendant does not dispute, that no such affirmation was filed. The Court need not reach the issue, however, because in any event, the Court determines that the People have demonstrated good faith and due diligence in complying with their discovery obligations. 
(ii) Due Diligence
Turning to the merits of the Defendant's challenge, the People's response meticulously details their efforts to comply with their statutory requirements from the inception of the case (see CPL 245.50 [5]). They describe the process used to organize all discovery gathered, determine what items might remain outstanding, and catalogue which materials were already disclosed. The People list by date all communications to obtain discovery, any follow up requests, and when particular items were disclosed. Additionally, the current Assistant District Attorney ("ADA") repeatedly conferred with the initially assigned ADA to ascertain the existence of any potentially missing items. 
The People have also documented the significant "volume of discovery provided" (see id.) In total, the People disclosed more than 2,157 pages of documents; approximately 23 photographs and screenshots; at least 38 BWC videos; and footage from 16 surveillance cameras. In contrast, the belatedly disclosed material was comprised of 17 pages of disciplinary records, and BWC footage from 3 officers, portions of which had already been timely disclosed.
The complexity of the case also weighs in favor of a finding of due diligence. Although the case is now a misdemeanor, the Defendant was originally charged with Attempted Gang Assault in the Third Degree, a felony offense. The case was further complicated by the fact that the Defendant was originally charged with two co-defendants. More than 20 officers responded to the scene the night of the alleged incident. Moreover, in investigating the incident, the People [*6]reviewed surveillance footage indicating that the Defendant had allegedly dropped a knife into a sewer grate in the aftermath of the alleged attack. The prosecutor notified Emergency Service Unit officers, who then responded to the scene and recovered the knife. In total, more than 30 officers from 6 NYPD precincts responded to the incident location on two separate dates, each officer generating discovery materials to be gathered, reviewed, and disclosed.
The People offer a thorough explanation for the belated disclosure of the two items that form the basis of the Defendant's challenge (see CPL 245.50 [5]). On November 6, 2024, the ADA initially assigned to the case disclosed BWC videos containing statements of each co-defendant. This material included the full BWC videos recorded by Officers Sari and Chunhui Lin, but only clips from the BWC videos recorded by Officers Chen, Preattle, and Pepperman. These clips were saved in an electronic file that was provided to the current ADA. The full BWC videos from Officers Chen, Preattle, and Pepperman, however, were not saved to this file. On March 14, 2025, the current ADA reviewed and disclosed 38 BWC videos, but was unaware that he had disclosed only portions of the BWC videos of Officers Chen, Preattle, and Pepperman. 
On May 16, 2025, the current ADA discovered that full videos for these officers existed, which contained additional footage than the clips previously disclosed. That same day, the ADA disclosed the full BWC videos to the defense, along with a supplemental COC and an explanation for the delayed disclosure. The People thus "self-reported the error and took prompt remedial action without court intervention" (see CPL 245.50 [5]). 
The People assert, and the defense does not dispute, that that the events captured in the missing portions were captured by numerous other BWC videos from more than 20 officers who responded to the scene and whose footage was turned over in full on March 14, 2025. The "substantively duplicative" nature of the BWC videos further weighs in favor of a finding of due diligence (see id.). 
The People's explanation for the belatedly disclosed disciplinary and impeachment material for Officers Sari and Hosannah is also persuasive. On May 15, 2025, while reviewing all BWC videos in further preparation for trial, the ADA determined that the testimony of Officers Sari and Hosannah would be useful at hearings and trial.[FN5]
The following day, on May 16, 2025, the People thus requested, expedited, and disclosed required impeachment material for these two officers. Here, too, the People recognized a discovery lapse, self-reported it, and promptly corrected it without court intervention (see id.). Moreover, the People are entitled to declare their readiness but continue to gather evidence to strengthen their case by deciding to call an additional witness (see People v Wright, 50 AD3d 429, 430 [1st Dept 2008]). There is no indication that their prior statements of readiness were illusory since they could have proceeded to trial without Officer Sari, whose only involvement appears to have been transporting the Defendant from the scene (see People v Ariola, 80 Misc 3d 132[A], 2023 NY Slip Op 51111[U] [App Term, 1st Dept 2023]).
The People have met their burden of showing their exercise of due diligence. The People [*7]made and documented numerous inquiries to ascertain discoverable material and, once identified, to obtain it. The People timely disclosed voluminous discovery, and the Defendant has not alleged any prejudice resulting from the delayed disclosures. Weighing the totality of the People's efforts to comply with their discovery obligations (See CPL 245.50 [5]), the belated disclosure of the materials at issue does not invalidate the COC, supplemental COCs, or statements of readiness. 
II. 30.30 Motion
Where a criminal action is commenced with the filing of a felony complaint, which is thereafter superseded with an information charging a Class A misdemeanor, and where the period "from the date of the filing of the felony complaint to the date of the filing of the new accusatory instrument," when added to the 90-day period applicable to Class A misdemeanors, "exceeds six months," the People must be ready for trial within six months of the commencement of the criminal action (CPL 30.30 [7] [c]). Here, the People filed a superseding misdemeanor information ninety-two days after the felony complaint was filed. Therefore, absent excludable time, the People had 181 days from commencement of the action to declare their readiness for trial.[FN6]
Once a defendant has alleged an unexcused delay greater than the statutory allowance, the burden shifts to the People to demonstrate that specific periods of delay should be excluded (see People v Santos, 68 NY2d 859, 861 [1986]; People v Berkowitz, 50 NY2d 333, 349 [1980]).
In his motion to dismiss, the Defendant argues that more than 90 days are chargeable to the People. The People, on the other hand, contend that only 76 days should be charged.[FN7]
This Court finds that days 168 are chargeable to the People, as follows:
A. November 5, 2024 to November 8, 2024: 3 days
On November 5, 2024, the People served notice of their intent to present the case to a grand jury. The case was adjourned to November 8, 2024, for grand jury action. This 3-day period is chargeable to the People.
B. November 8, 2024 to December 18, 2024: 40 days
On November 8, 2024, there was no grand jury action. The case was adjourned to [*8]December 18, 2024, for grand jury action. This 40-day period is chargeable to the People.
C. December 18, 2024 to February 5, 2025: 49 days
On December 18, 2024, there was no grand jury action. The case was adjourned to February 5, 2024, for grand jury action. This 49-day period is chargeable to the People.
D. February 5, 2025 to March 19, 2025: 42 days
On February 5, 2025, the People moved to dismiss Counts One, Two, Three, and Four of the felony complaint, and filed and served a misdemeanor complaint and three supporting depositions. The Court deemed the accusatory instrument a superseding misdemeanor information, without objection from the defense. The case was adjourned to March 19, 2025, for trial. This 42-day period is chargeable to the People.
E. March 19, 2025 to May 8, 2025: 34 days
On March 19, 2025, the People were not ready for trial. The case was adjourned to May 8, 2025, for trial. In the interim, on April 22, 2025, the People filed and served off-calendar a COC and COR. On May 7, 2025, the People served additional discovery materials on the defense and filed and served a supplemental COC and restatement of readiness. In the instant motion, the Defendant challenges the COCs and CORs as invalid. For the reasons set forth in Section I (B) (ii), supra, the Defendant's challenge is denied. The 34-day period from March 19, 2025 to April 22, 2025, is chargeable to the People.
F. May 8, 2025 to July 3, 2025: 0 days
On May 8, 2025, the People were ready for trial. The defense requested an adjournment to confer with the People about videos that the defense believed were missing from the People's disclosures.[FN8]
The case was adjourned to July 3, 2025, for trial. On May 16, 2025, and July 2, 2025, the People served additional discovery materials on the defense and filed and served supplemental COCs and restatements of readiness (see Section I [B] [ii], supra). The Defendant likewise challenges the validity of the COCs and CORs in the instant motion. For the reasons set forth in Section I (B) (ii), supra, the Defendant's challenge is denied. This period is not chargeable to the People (CPL 30.30 [4] [b]).
G. July 3, 2025 to October 1, 2025: 0 days
On July 3, 2025, the People were ready for trial. The Court set a motion schedule for the instant motion. The case was adjourned to October 1, 2025, for decision. This period is not chargeable to the People (CPL 30.30 [4] [a]).[FN9]

Accordingly, 168 days are chargeable to the People; the motion to dismiss is denied. 
III. Remaining Motions
The Defendant's motion for a Huntley/Dunaway hearing is granted. 
The Defendant's motion for a Wade hearing and to preclude the introduction of identification testimony is denied. The People represent that they do not intend to introduce at trial testimony of any witness who identified the Defendant in a police-arranged confrontation and did not serve notice of any such identification.
The Defendant's motion for a Mapp/Dunaway hearing is granted. 
The Defendant's motion for a Sandoval hearing is reserved for decision by the trial court. 
This opinion constitutes the decision and order of the Court.
Dated: September 30, 2025
New York, New York
Kacie A. Lally

Footnotes

Footnote 1:Criminal Procedure Law Article 245 went into effect on January 1, 2020, and has since been amended, most recently on August 7, 2025.

Footnote 2:Similarly, a COC will not be deemed invalid if the People subsequently produce additional discovery that "did not exist at the time of the filing of the original certificate of compliance" (id.).

Footnote 3:This 35-day period may be extended upon a showing of good cause, or where the grounds for the challenge are "based upon a material change in circumstances" (CPL 245.50 [4] [c] [i], [ii]).

Footnote 4:Amendments to CPL Article 245, including the 35-day time period to challenge COCs, and the requirement of an affirmation regarding good faith efforts to confer, became effective on August 7, 2025 (CPL 245.50 [4] [c], as amended by L 2025, ch 56, part LL, § 8). The amendments apply "to all criminal actions pending" on that date, including the instant matter. The requirement that a challenge to a COC be filed within 35 days of service, however, "run[s] from the effective date" of the statute (id.). The retroactivity of these amendments, and their application to the facts of this case, are discussed in Section I (B) (ii), infra.

Footnote 5:Officer Sari transported the Defendant and co-defendant Dilworth from the scene. Officer Hosannah handcuffed and transported co-defendant Butler. The People maintain that Officer Hosannah's testimony is required only at the trial of co-defendant Butler, and is not relevant or discoverable for the Defendant's case.

Footnote 6:CPL 1.20 (17) provides that "[a] criminal action is commenced by the filing of an accusatory instrument against a defendant in a criminal court." Here, the accusatory instrument was filed on November 5, 2024. The speedy trial clock started running the next day (People v Stiles, 70 NY2d 765, 767 [1987]).

Footnote 7:The Defendant asserts that the People have 90 days to declare their readiness for trial, pursuant to CPL 30.30 (1) (b). That subdivision, however, is not applicable here, where the Defendant was originally charged with a felony, and the misdemeanor information was filed 92 days later (CPL 30.30 [7] [c].) The People state that they are required to be ready for trial within six months. This is correct. The People further calculate this six-month period to be 180 days, which is incorrect. The six-month period from November 5, 2024, to May 5, 2025, is 181 days.

Footnote 8:Defense counsel also indicated that she would require an adjournment due to an upcoming trial. 

Footnote 9:In the People's opposition to the instant motion, they state that on August 29, 2025, they disclosed additional discovery and filed and served a supplemental COC and restatement of readiness. The People assert that these materials relate to separately charged co-defendant Butler, or are not otherwise automatically discoverable, but were turned over once obtained as a courtesy to the Defendant. The Defendant was permitted an opportunity to file a reply but has not done so and, therefore, has not addressed this issue.