People v McGriff (2026 NY Slip Op 50109(U))

[*1]

People v McGriff

2026 NY Slip Op 50109(U)

Decided on February 2, 2026

Supreme Court, Bronx County

Bowen, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 2, 2026
Supreme Court, Bronx County

The People of the State of New York

againstJamel McGriff, Defendant.

Ind. No. 071458-25

Shannon Marie Keown, Assistant District Attorney, Bronx County, for the PeopleWeronika Bzura, The Bronx Defenders, for Defendant

E. Deronn Bowen, J.

Summary
1. HOLDING: The 35-day time limit to contest the validity of a certificate of compliance (CoC), enacted on August 7, 2025, applies to CoCs filed before that date, with the discovery review "clock" commencing on August 7, 2025. 
2. The defense application to deem invalid the People's CoC dated May 4, 2025, is DENIED on both procedural and substantive grounds.3. The defense application to dismiss the indictment on statutory speedy trial grounds is DENIED.
 I. BackgroundDefendant Jamel McGriff stands charged in an indictment with failing to report a change of address (Correction Law §§ 168-f [4]; 168-t). The grand jury returned a true bill on April 7, 2025; the People served and filed a certificate of compliance (CoC) and a statement of readiness (SoR) on May 4, 2025; and defendant was arraigned on the indictment on May 7, 2025. The matter then proceeded in Supreme Court for nearly six months, with approximately a half-dozen court appearances involving pretrial motion practice, plea conferencing and, at one point, the ordering and staying of a bench warrant due to defendant's nonappearance. Throughout the proceedings no mention was made by either party of any discovery-related concerns.
On November 5, 2025, the court permitted the parties a two-week adjournment to attempt to work out a disposition. On November 19, 2025, the parties remained at an impasse, and the matter was adjourned to December 2, 2025, for hearings and trial. At 12:33 a.m. of the December 2nd hearing and trial date, defense counsel electronically served and filed a motion to invalidate the People's CoC on discovery noncompliance grounds and to dismiss the indictment on statutory speedy trial grounds. Per the motion, "[o]n November 26, 2025, three business days before trial, the prosecution shared with defense the names of two new witnesses that would be [*2]testifying at trial."
The court conferenced the motion with the parties later that day, December 2, 2025 (see CPL 245.35 [2]). Defense counsel agreed that, in the court's words, "the crux of the defense's argument" was the People's failure to "directly notify, or at least explicitly state, they were going to be calling witnesses from DCJS (Division of Criminal Justice Services) and DHS (Department of Homeless Services)" to testify at trial. The court credits that the People likely could not have known the specific identity of each respective government agency witness until closer to the date of the trial (see People v Matos, 79 Misc 3d 1208[A], 2023 NY Slip Op 50553[U], *5 [Crim Ct, Bronx County 2023]). However, the prosecution neglected, until just a few days before the trial date, to indicate its intent to call as necessary witnesses a representative from each of DCJS and DHS at all. The prosecutor conceded, "That was a mistake," which led to the following colloquy between the court and defense counsel.
"[THE COURT]: Is this error by the People significant enough to constitute a basis for invalidating the COC? . . . .[DEFENSE COUNSEL]: My position would be yes, Judge, because this isn't a missing page of an activity log. This is doubling the witness list, and these are two key witnesses that the prosecution would need to literally prove their case.[THE COURT]: Doesn't that mean that the defense should be aware that the People will come to realize that they will need those witnesses and their paperwork?. . . .In this case, when you are talking about a governmental agency . . . , isn't it reasonable to expect that a defense attorney would plan for, and would strategize for, hey, the People . . . may [come to] realize [that the witnesses were inadvertently omitted from the witness list]? And, so, you prep for this?I don't know how this can be treated as prejudicial, [as though] the defense just had no way of knowing the People would ever want to call these witnesses . . . .[DEFENSE COUNSEL]: There's a difference between the defense knowing what the prosecution would need to prove their case and knowing what the prosecution knows they would need. If, in every other situation, they routinely mention in their COC that they are calling a representative from so-and-so agency, such as the DMV, to be named [at] a later date, but they didn't do that in this case, I think it was reasonable for me to assume that they didn't realize they needed these representatives, which is basically what the ADA said . . . .. . . .[THE COURT]: That's fair, but it doesn't go to my question. Isn't it reasonable as defense counsel to also plan for what if [the People] do realize [the need to call these witnesses]? And doesn't the discovery statute make accommodation for that reality?[DEFENSE COUNSEL]: The purpose of the COC is for defense to have this information ahead of time."Following oral arguments, the court found that
"[t]he People did admittedly make an error. However, the error does not strike me as being the type of severe error with regard to the defense being able to prepare for trial that would implicate the legitimacy of the People's certificate of compliance. . . . I will deny the defense motion."
The court now issues this decision and order to better explain the procedural and substantive [*3]rationales for denying the application to invalidate the People's CoC.

II. CPL Article 245 Discovery Compliance Analysis
 A. The August 7, 2025, Amendments to the Discovery Statute
Numerous courts have reasoned persuasively that recent amendments to CPL article 245, that took effect on August 7, 2025, govern the discovery obligations and procedures in still-active criminal prosecutions as of that date (see e.g. People v Peterson, 87 Misc 3d 1235[A], 2025 NY Slip Op 51789[U], *2 [Sup Ct, Kings County 2025]; People v Iza, — Misc 3d —, 2025 NY Slip Op 25231, *2 [Crim Ct, Kings County 2025]; People v Santiago, 87 Misc 3d 1221[A], 2025 NY Slip Op 51653[U], *4 [Crim Ct, NY County 2025]; People v Hall, 87 Misc 3d 1203[A], 2025 NY Slip Op 51446[U], *2 [Crim Ct, NY County 2025]; People v Duross, 86 Misc 3d 1266[A], 2025 NY Slip Op 51352[U], *1-*2 [Utica City Ct 2025]). The court accords with this determination and rejects the contrary defense motion averment that the 2025 amendments are inapplicable to matters, such as this one, that commenced before August 7, 2025.
There is, however, some jurisprudential dispute as to whether the 35-day time limit for challenging the validity of a CoC, enacted as part of the 2025 amendments (see CPL 245.50 [4] [c]), appertains to CoCs filed before August 7, 2025. Some courts have held flatly that "the 35-day time limitation for challenging COCs applies only to certificates filed on or after the effective date of August 7, 2025" [Santiago, 2025 NY Slip Op 51653[U], *4]. Others hold, contrarily, that, "with respect to cases where certificates of compliance were filed prior to August 7, 2025, the 35-day period for defense challenges begins on August 7, 2025, rather than the earlier date of filing and service" (Iza, 2025 NY Slip Op 25231, *3).
In evaluating these competing points of view, as "with any question of statutory interpretation, our task is to ascertain and give effect to the intention of the legislature" (People ex rel. Ellis v Imperati, — NY3d —, 2025 NY Slip Op 03646, *3 [2025] [internal quotation marks omitted]). Relevant to the conflict here, the 2025 discovery amendment drafters were explicit: "Any time-frames [sic] provided in this act regarding the time limitation to challenge a certificate of compliance shall run from the effective date of this act" (L 2025, ch 56, part LL § 8 [p 131], available at 
https://legislation.nysenate.gov/pdf/bills/2025/a3006c 
[last accessed Feb. 1, 2026]). These words make clear that the legislative intent is not for there to be a blanket exception to the 35-day deadline if challenging the validity of a CoC filed before the 2025 amendments' effective date. The court, therefore, accords with the view that the 2025 amendments establish a 35-day discovery review "clock" for CoCs predating August 7, 2025, with that date standing as day "zero" (see General Construction Law § 20; People v Stiles, 70 NY2d 765, 767 [1987] [applying General Construction Law § 20 to CPL 30.30 analysis]; Messina v Lufthansa German Airlines, 47 NY2d 111, 115 [1979] [applying General Construction Law § 20 to the analysis of a contractual obligation]; JPMorgan Chase Bank v Lowell, 309 AD2d 541, 542 [2003] ["applying General Construction Law § 20 to Article 18.02 of the Ground Lease"]).

B. Procedural Analysis
During oral arguments on December 2, 2025, defense counsel posited that,
"if, in every other situation, [the People] routinely mention in their COC that they are calling a representative from so-and-so agency, such as the DMV, to be named [at] a later [*4]date, but they didn't do that in this case, I think it was reasonable for me to assume that they didn't realize they needed these representatives" (emphasis added).
Counsel effectively conceded knowing (and strategic silence) since on or about the CoC-filing date nearly seven months earlier that the discoverable identification of "needed [government agency] representatives" was missing from the People's witness list (see CPL 245.20 [1] [c]). The CoC-challenge, filed on December 2, 2025—nearly four months after the 35-day discovery review "clock" began to run on August 7, 2025—is, as a result, untimely.
Separately, the defense has not demonstrated its compliance with the also-enforceable notification and conferral requirements of the 2025 amendments.
"[C]hallenges to a certificate of compliance or supplemental certificate of compliance shall be accompanied by an affirmation by the moving party that, after the filing of the opposing party's certificate of compliance, such moving party timely conferred in good faith or timely made good faith efforts to confer with the opposing party regarding the specific and particularized matters forming the basis for such challenge, that efforts to obtain the missing discovery from the opposing party or otherwise resolve the issues raised were unsuccessful, and that no accommodation could be reached" (CPL 245.50 [4] [c]).
No such affirmation has been provided here. Nor does the record otherwise reflect that the defense raised the missing-witness discovery issue with the prosecution and attempted in good faith to "diligently confer to attempt to reach an accommodation as to any dispute concerning discovery prior to seeking a ruling from the court" (CPL 245.35 [1]).[FN1]
Quite the opposite, as already noted, on December 2, 2025, counsel admitted to intentionally keeping silent about the People's inadvertent discovery omission for trial-strategic purposes.
The defense failure to comply with both the 35-day deadline and the notification/conferral requirements enacted as part of the 2025 amendments to the discovery statute presents two independent procedural bars to the court's consideration of the merits of the CoC-invalidation motion.[FN2]
Accordingly, the branch of the defense motion seeking the [*5]invalidation of the People's CoC is DENIED on each respective procedural ground. The correlated branch of the defense motion, seeking the dismissal of the indictment on statutory [*6]speedy trial grounds, is DENIED, as it depends upon a finding of CoC invalidity for which, again, such analysis is procedurally barred.

C. Substantive Analysis
Even assuming arguendo that the CoC-invalidation motion were timely filed and procedurally proper, it would nevertheless fail on the merits. The effective argument is that the prosecution's admittedly untimely notification of the intent to call necessary witnesses—by at least identifying the relevant government agencies—constituted a failure of due diligence for which CoC invalidation is the proper remedy (see People v Bay, 41 NY3d 200, 212 [2023] ["while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence"]). The 2025 amendments direct the court's evaluation of the defense claim.
"In assessing a party's due diligence, the court shall look at the totality of the party's efforts to comply with the provisions of this article, rather than assess the party's efforts item by item.[a] Relevant factors for assessing the prosecutor's due diligence include, but are not limited to: the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial.[b] The court's determination shall be based on consideration of all factors listed in paragraph (a) of this subdivision and no one factor shall be determinative" (CPL 245.50 [5] [a], [b]).[FN3]
Granted, in a holistic review of the People's discovery compliance, it is possible for even a single discovery lapse to be so consequential as to require the invalidation of a CoC (see People v Loja, 86 Misc 3d 318, 333 [Crim Ct, Bronx County 2025]; People v Zweifach, 76 Misc 3d 1204[A], 2022 NY Slip Op 50823[U], *1-*2 [Crim Ct, Richmond County 2022]). However, the People's only noted discovery lapse here—neglecting to identify witnesses about whom defense counsel was already aware—does not reflect a lack of either good faith (about which the defense does not complain) or holistic due diligence. Neither has the disclosure delay unduly prejudiced counsel in plea bargaining, hearing or trial preparation, or advising defendant.
As in People v Deas (226 AD3d 823 [2024]), it also is the case here that
"the People's failure to disclose the [discovery] in a timely fashion was inadvertent and without bad faith or a lack of due diligence. Moreover, there is no indication that the People had otherwise knowingly attempted to delay the trial. The People took sufficient and immediate steps to provide the [discovery] to the defendant once they [became] aware of its existence" (id. at 826; see People v Godfred, 77 Misc 3d 1119, 1124 [Crim Ct, Bronx County 2022] ["the rules seek not to punish unintentional or harmless non-compliance, but to ensure that defendants get a fair trial"]).On the merits, after "reviewing the parties' motion papers, the court file, and utilizing the factors set forth in CPL 245.50 (5), the Court concludes that the People exercised [holistic] good faith and due diligence, and that their COC is valid and that their SOR is not illusory" (People v Washington, — Misc 3d —, 2025 NY Slip Op 25265, *18 [Putnam County Ct 2025]), despite an "admitted goof that was fully corrected" (People v Jerez, 80 Misc 3d 1238[A], 2023 NY Slip Op 51195[U], *1 [Crim Ct, Bronx County 2023], *2 ["The court declines to vitiate the otherwise presumptively valid initial CoC in this matter in light of the [prosecution's] demonstrated diligent, good faith effort to ascertain the existence of material or information discoverable under and to cause such material or information to be made available for discovery"] [internal quotation marks omitted). Accordingly, the CoC-invalidation motion is, alternatively, DENIED as unmeritorious, as is the correlated application to dismiss the indictment on statutory speedy trial grounds.

III. Trial Practice Versus Discovery Practice
A hearing or trial-strategic choice to refrain from notifying the prosecution of a discovery issue has a significant potential drawback. Should the prosecution, as here, later identify and self-correct the issue, then a CoC-invalidation motion likely will not serve as a viable Plan B. This is because, whereas a valid hearing or trial strategy may reasonably rely, in part, on tactical silence or omission, CPL article 245 was not designed—and was never intended—to serve as a [*7]springboard for CoC-invalidation/30.30-dismissal motion practice by ambush (see People v McCray, 83 Misc 3d 1220[A], 2024 NY Slip Op 50760[U], *6 [Crim Ct, Bronx County 2024] ["Neither the court's reading of CPL article 245, nor a review of its legislative history, reveals the State Legislature as having intended the discovery statute to serve as a prosecutorial obstacle course of Navy SEAL Hell Week proportions, where even the most minor of slip-ups, oversights, errors and delays are grounds for immediate CoC invalidation"]). The 2025 amendments pronounce this point more clearly with codified time limits. But, to the court's mind, this has always been perspicuous despite attorneys' sometimes frustrating obstinance on the point (see ante nn 2-3).
Before the enactment of the 2025 amendments—and even the 2022 amendments—to the CPL article 245 discovery statute, the courts already were aware that, "[i]n enacting the new discovery statute, the Legislature did not intend to promote gamesmanship, but rather to ensure the free flow of information from the police to the prosecutor and ultimately to the defendant" (People v Smith, 79 Misc 3d 649, 654 [Sup Ct, Queens County 2023]; see People v Solomonidis, 81 Misc 3d 1223[A], 2023 NY Slip Op 51438, *3 [Genesee County Ct 2023] ["The discovery statutes should not be an inescapable trap for the prosecution"] [internal quotation marks omitted]; People v Morales, 86 Misc 3d 523, 525 [Crim Ct, Kings County Feb. 20, 2025] ["[T]he defendant failed to confer with the People in flagrant violation of his discovery obligations . . . . Instead, the defendant lay in wait, seeking the tactical advantage of only notifying the People after more than ninety days from the defendant's arraignment had elapsed by filing the instant motion. The defendant failed to confer with the People as soon as practicable and cannot now seek to benefit from his utter disregard for the rules of discovery"]; Loja, 86 Misc 3d at 331 ["In deference to the legislative intent undergirding CPL article 245, the court may not stand idly by if the rules of discovery compliance are being contorted—intentionally or not—into a game of gotcha or Where's Waldo"]; People v Valdez, 80 Misc 3d 544, 555 [Crim Ct, Kings County 2023] ["Equity would not be served if the defense were allowed to . . . fail to inform the Prosecutor as soon as practicable their defects with the COC while simultaneously seeking to invalidate the People's COC"]); People v Kaba, 75 Misc 3d 1218[A], 2022 NY Slip Op 50538[U], *3 [Cohoes City Ct 2022] ["all too often, the application of CPL § 245.50 has turned discovery into a game of 'gotcha' "]; People v Barralaga, 73 Misc 3d 510, 520-521 [Crim Ct, NY County 2021] ["[I]t would encourage gamesmanship to permit the defense to allow the speedy trial clock to run for an unreasonable period before . . . contacting the prosecutor to resolve discovery disputes. CPL 30.30 (5) was enacted to protect a defendant from being unfairly disadvantaged preparing for trial by the withholding of discovery. That protection must not be used as a sword by the defendant to run out the CPL 30.30 clock"]; cf. People v Whyte, 87 Misc 3d 1247[A], 2025 NY Slip Op 51934[U], *1-*2 [Tompkins County Ct Dec. 5, 2025] ["The statutory scheme demands diligence and transparency—not a lastminute [sic] effort to manufacture a dismissal argument on the eve of trial. The Court will not allow discovery to be weaponized in this manner"]; People v Diallo, 86 Misc 3d 1261[A], 2025 NY Slip Op 51324[U], *8 [Yonkers City Ct Aug. 22, 2025] ["Defendant cannot use undue delay to accrue speedy trial time, therefore, this [sic] Court declines to charge the People with the full period of defendant's delay"]).
The modern discovery statute was enacted to promote fairness and efficiency in plea negotiations; in hearing and trial preparation; and in advising clients by providing the defense with information relevant to these purposes earlier in the proceedings. Yet, subsequent [*8]legislative amendments have been passed, and countless court decisions have been issued, in direct response to
"the defense bar's generally overly rose-tinted view of the discovery statute. While CPL article 245 certainly is a stark 'improvement' for criminal defendants, as compared with its predecessor, CPL article 240, the fact remains that, contrary to the apparent defense bar perception, CPL article 245 is not just a collection of prosecutorial obligations. The discovery statute's interlocking provisions place clear duties upon both parties to approach discovery disputes with mutual good-faith, accommodation, reasonableness and 'due diligence,' which is 'a familiar and flexible standard that requires the [parties] to make reasonable efforts to comply with statutory directives' " (McCray, 2024 NY Slip Op 50760[U], *8, quoting Bay, 41 NY3d at 211; see People v DePallo, 96 NY2d 437, 441 [2001] ["an attorney's duty to zealously represent a client is circumscribed by an 'equally solemn duty to comply with the law and standards of professional conduct' "], quoting Nix v Whiteside, 475 US 157, 168 [1986]).The court, sitting as Criminal Court, has said it before—and before the 2025 amendments—and will say it again: "If a party refuses to engage in CPL 245.35 (1) conferencing with the good-faith intention of reaching a reasonable accommodation over discovery disputes, despite the plain statutory expectation, then the court will have no choice but to be reasonable on that party's behalf during CPL 245.35 (2) conferencing" (McCray, 2024 NY Slip Op 50760[U], *2 n 4). The People are reminded of their ongoing discovery, Brady and Giglio obligations (see CPL art 245; Giglio v United States, 405 US 150 [1972]; Brady v Maryland, 373 US 83 [1963]). The defense, too, is reminded of its discovery obligations (see CPL 245.10 [2]; 245.20 [4]; 245.50 [2]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
Dated: February 2, 2026Bronx, New YorkE. Deronn Bowen, A.J.S.C.

Footnotes

Footnote 1: The failure to initiate good-faith communication with a party opponent concerning discovery disputes and omissions also violates the court's own rules, that, per the rules, "will result in the summary denial of related discovery motions and possibly sanctions" (Rules of Part 17 [Sup Ct, Bronx County — Criminal Term] rule 4 [b] [ii] ["Failure to provide timely notice '[t]o the extent that the party is aware of a potential defect or deficiency related to a certificate of compliance or supplemental certificate of compliance,' or to engage in meaningful discussions over all discovery disputes, will result in the summary denial of related discovery motions and possibly sanctions"] [emphasis in the original], quoting CPL 245.50 [4] [b], citing CPL 245.10 [2]; 245.35 [1]; CPL 245.80 [2]).

Footnote 2:More than three years prior to the enactment of the 2025 discovery statute amendments, a 2022 amendment added language that, "[t]o the extent that the party is aware of a potential defect or deficiency related to a certificate of compliance or supplemental certificate of compliance, the party entitled to disclosure shall notify or alert the opposing party" (CPL 245.50 [4] [b] [emphasis added]). Thus, it has already been the case under our discovery jurisprudence that "parties must notify opposing parties of a COC deficiency or challenge the sufficiency of a COC as soon as practicable" (People v Bay, 41 NY3d 200, 210 [2023], citing CPL 245.50 [4] [b], [c]; see People v Sellie, 77 Misc 3d 1234[A], 2023 NY Slip Op 50093[U], *5 [Schenectady County Ct 2023] ["Where, as here, the defense is aware of a potential defect or deficiency related to a certificate of compliance, counsel must 'notify or alert the opposing party as soon as practicable' of the defect"], quoting CPL 245.50 [4] [b]; cf. People v Lanfair, 78 Misc 3d 371, 375 [Cohoes City Ct 2023] [discussing "to what extent must the challenging party be 'aware' of the discovery issue before notifying its adversary"]).

It already was the case pre-2025 amendments that the unreasonable absence or "untimeliness" of CPL 245.50 (4) (b) notification to a party opponent already "provide[d] an independent basis for a trial court to deny a dismissal motion challenging a COC" (People v Lantigua, 86 Misc 3d 1242[A], 2025 NY Slip Op 51193[U], *1 [Crim Ct, Bronx County July 18, 2025]; see People v Shirer, 84 Misc 3d 1242[A], 2024 NY Slip Op 51665[U], *2-*3 [Crim Ct, Kings County 2024] ["Under the circumstances in this case the motion to dismiss is denied, as not being filed as soon as practicable"] [internal citation omitted]; People v Guzman, 81 Misc 3d 1217[A], 2023 NY Slip Op 51363[U], *2 [Crim Ct, Bronx County 2023] ["A discovery oversight or error by the People—particularly prior to the receipt of mandatory CPL 245.50 (4) (b) notice from the defense—does not per se render a CoC invalid"]; People v Valdez, 80 Misc 3d 544, 554 [Crim Ct, Kings County 2023] ["defendant did not notify the People of the alleged deficiencies related to the COC as soon as practicable and their motion to strike the COC[ ] is denied for failure to comply with the requirements of CPL § 245.50 (4) (b)"]).

"As the legislative history of article 245 indicates, . . . the new discovery law, designed as it was to be remedial in nature, should not be construed as an inescapable trap for the diligent prosecutor who professionally, assiduously and in good faith attempts to comply" (People v Erby, 68 Misc 3d 625, 633 [Sup Ct, Bronx County 2020]). Consequently, it, too, already was the case pre-2025 amendments that "it would pervert the legislative intent of the notice requirement to issue . . . a CoC . . . invalidation ruling that would effectively mandate the dismissal of an [accusatory instrument] on statutory speedy trial grounds despite the People having not been given a noticed opportunity to correct any discovery errors" (People v Loja, 86 Misc 3d 318, 335 [Crim Ct, Bronx County Jan. 6, 2025]; see People v Seymour, 84 Misc 3d 23, 25 [App Term, 2d Dept, 9th & 10th Jud Dists 2024] ["as defendant's first notification of any deficiency in, or challenge to the sufficiency of, the COC was 72 days after the prosecution filed its COC, when defendant filed his motion, defendant's motion, under the circumstances presented herein, was properly denied as untimely"]; People v Smith, 79 Misc 3d 649, 654 [Sup Ct, Queens County 2023] ["because of defendant's unreasonable inaction and undue delay in notifying the People of discovery defects and/or challenging the People's COC as soon as practicable, this Court declines to charge the People with all speedy trial accruals since its filing of the original COC"]; People v Sanders, 81 Misc 3d 1223[A], 2023 NY Slip Op 51435[U], *3 [Crim Ct, Bronx County 2023] ["undue delay by defendant in raising any [discovery] defects or objecting by motion is not chargeable to the People"]; People v Grant, 75 Misc 3d 1219[A], 2022 NY Slip Op 50549[U], *3 [Yonkers City Ct 2022] ["undue delay by the defendant in seeking relief will not be charged to the People"]).

Footnote 3:As with the notification requirement (see ante n 2), it also was already well recognized before the 2025 amendments went into effect that discovery due diligence analysis "calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [2024]; see People v Perez, 73 Misc 3d 171, 176 [Sup Ct, Queens County 2021] [noting with a citation that "numerous courts have found that belated disclosures should not invalidate a certificate of compliance that was made in good faith after the exercise of due diligence where the delay resulted from, for example, minor oversights in the production of material, delayed discovery of the existence of certain items, or a good faith position that the material in question was not discoverable"]; People v Vaillant, 80 Misc 3d 856, 870-871 [Crim Ct, Bronx County 2023] ["Although not insignificant, the issues complained of are insufficient, against a reasonableness standard, to deem the People not duly diligent, on the whole, in complying with their discovery obligations"]; People v Kheir, 74 Misc 3d 712, 717 [Town of Greenburgh Just Ct 2022] [noting with a string citation that "numerous courts have found that belated disclosures should not invalidate a certificate of compliance that was made in good faith after the exercise of due diligence"] [internal quotation marks and brackets omitted]; cf. People v Barralaga, 73 Misc 3d 510, 514 [Crim Ct, NY County 2021] ["given the nature and number of items the People failed to turn over, it is difficult to fathom an explanation that would result in a finding that they were diligent"]).

Indeed, the non-exhaustive list incorporated in the 2025 amendments, of "[r]elevant factors for assessing the prosecutor's due diligence" (CPL 245.50 [a]), was inspired by (and largely borrowed from) the list created more than two years ago by the Court of Appeals for the exact same purpose (see Bay, 41 NY3d at 212).